**UNITED STATES of America,
Appellee,**

v.

**John G. JUNCAL, Ramasamy Egambaram, Harvey L. Schilowitz, Danny Kemp, Defendants,**

---

**Raymond H. Lancaster, Defendant–Appellant.**

No. 00–1257.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 2000.

Decided April 2, 2001.

Thomas F.X. Dunn, New York, NY, for Defendant–Appellant.

Bret R. Williams, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Meir Feder, Christine H. Chung, Assistant United States Attorneys, of counsel), New York, NY, for Appellee.

Before CARDAMONE, WINTER, and POOLER, Circuit Judges.

WINTER, Circuit Judge:

Raymond H. Lancaster appeals from his convictions for conspiracy and wire fraud, in violation of 18 U.S.C. §§ 371 & 1343, based on guilty pleas before Judge Keenan. The appeal raises two issues: whether the district court properly denied appellant's motion to withdraw his guilty plea and whether it erred in imposing a two-level sentencing enhancement for obstruction of justice based on an allegedly perjurious affidavit. See U.S.S.G. § 3C1.1. We affirm the denial of appellant's motion to withdraw his plea but hold that he did not commit perjury by claiming in an affidavit that he had been "coerced" into pleading guilty. Because the sentencing enhancement was unwarranted, we vacate the sentence and remand for resentencing.

## BACKGROUND

This appeal arises out of a scheme to issue a fraudulent surety bond. The scheme involved the bogus assignment of $500 million in U .S. Treasury Securities, ostensibly owned by Red Rock Dragon, Ltd., a company owned by codefendant John G. Juncal, to Investor's Guaranty Group, Inc. ("IGGI"), a company controlled in part by appellant. Red Rock Dragons's claim that it owned the securities, which were to serve as collateral for the bond, was false. A four-count indictment charged appellant with one count of conspiracy to commit wire fraud and three substantive counts of wire fraud. The conspiracy count recounted the bogus assignment of the U.S. Treasury Securities; negotiations among appellant, his codefendants, and an undercover FBI agent; the use of fax machines to transmit documents relating to the fraudulent surety bond over interstate wires; and the issuance of the fraudulent bond itself. The substantive wire-fraud counts charged three specific wire transmissions in furtherance of the fraudulent scheme.

In the course of pretrial preparation, appellant and his attorney had five in-person meetings and some sixty telephone conversations. Frequent communication

by phone was necessary because appellant lived in California, while his attorney was located in New York, the site of the upcoming trial. During pretrial preparations, appellant adamantly rejected suggestions that he plead guilty rather than go to trial. As jury selection got underway, however, he was persuaded to plead guilty to all four counts of the indictment. Appellant signed a plea agreement on January 20, 1999.

The district judge held a plea allocution that day. At the allocution, the court ascertained from appellant that he had received copies of the indictment and the plea agreement, had reviewed those documents with his attorney, and had understood them. Appellant waived the reading of his indictment and affirmed that he was satisfied with his attorney's representation and that the plea was fully voluntary.

The court asked appellant whether he had "been induced to offer to plead guilty by any threat, pressure or force or anything like that?" Appellant answered in the negative. The court then asked appellant to describe the conduct that served as the basis for his plea. In response, appellant explained his role in the scheme, including the use of fax machines, misrepresentations about the nature of his company, and his deliberate avoidance of any attempt to learn whether the scheme was fraudulent. With regard to his knowledge of fraud, appellant admitted that while the scheme was ongoing, he learned of a federal investigation into the transaction but "deliberately failed to heed the red flag that federal law enforcement officers brought to [his] attention." The district judge accepted appellant's plea.

Almost a year later, appellant, represented by new counsel, moved to withdraw his guilty plea and proffered an affidavit stating that: (i) the court failed to inform him of the nature of the charges to which he was pleading guilty; (ii) the court had not ascertained an adequate factual basis for the plea; and (iii) his former attorney had "coerced" him into pleading guilty by refusing to defend him, "seldom ma[king] any effort to listen to" him and failing to follow up on information that appellant had provided him.

Appellant's affidavit recounted the events that in his view amounted to coercion causing him to plead guilty. According to the affidavit, appellant perceived his trial attorney to be ill-prepared for trial. There were disagreements over calling certain witnesses. The attorney repeatedly predicted that the jury would convict appellant, told appellant that the attorney "would not be able to present a defense" at trial, and advised appellant that he would receive more jail time if he went to trial rather than agree to a plea. Defense counsel facilitated a meeting in which the prosecutor told appellant that securing a conviction would be easy and that the prosecution would seek the maximum penalty if appellant were to force a trial. However, the prosecutor also stated that if appellant were to accept the plea, the prosecutor "would go easy on" him. Appellant's attorney then arranged a meeting between appellant and a supervisory attorney at the Federal Defenders' office. The supervisor also advised appellant that he "would certainly [lose] if [he] were to continue forward with the trial." Appellant described his mental state at this point as "frightened" and "under duress" as a result of the meetings. Appellant next asked his attorney whether he would have any time to prepare for incarceration if he were to be convicted at trial. His attorney explained that he would be immediately incarcerated upon a conviction, but that, if he were to enter a plea, he could remain at

liberty for several months. Appellant then agreed to plead guilty.

The district court held a hearing on appellant's motion to withdraw the plea at which appellant's former attorney testified, after appellant waived the attorney-client privilege. The attorney's version of events was, except with regard to the adequacy of his trial preparation, not greatly at odds with appellant's version. The attorney expected to lose if a trial were held, regarded the witnesses proposed by appellant as more dangerous than helpful, and believed it was very much in appellant's interest to plead guilty. He conveyed these views to appellant in no uncertain terms. He generally verified appellant's descriptions of meetings with the prosecutor and the supervisor in the Federal Defenders' Office.

At the conclusion of the hearing, the district court found that the attorney had done nothing improper, that no one had improperly induced appellant to plead guilty, that appellant's plea was knowing and voluntary, and the appellant's allocution had fully complied with Fed.R.Crim.P. 11. He therefore denied his motion to withdraw the plea.

Before sentencing, the government requested a two-level enhancement under U.S.S.G. § 3C1.1, for obstruction of justice based on appellant's "submitting a perjurious affidavit in connection with a motion to withdraw his guilty plea on the alleged ground that ... his then court-appointed counsel ... engaged in coercive tactics to force a guilty plea." Specifically, the government pointed to three assertions in the affidavit that it regarded as perjurious: (i) "I did not enter this plea of guilty voluntarily [but] under the coercion exercised upon me by my attorney at the time"; (ii) "I was being pressured by my attorney and everyone he had talk with me [and] was under duress during these conversations"; and (iii) "because of [my attor-

ney's] coercive tactics, I reluctantly pled guilty".

The district court agreed with the government, finding:

The evidence here is clear and convincing that the defendant committed perjury in his affidavit when he wrote, ... "under the coercion exercised upon me by my attorney at the time Mr. Jonathan Bach, Esq., who very seldom made any effort to listen to me and did not follow up on information I provided him."

The guilty plea in the minutes of the March 7, 2000, hearing demonstrates beyond question that the guilty plea was knowing and voluntary. I find by clear and convincing evidence that the defendant intentionally gave false testimony as to a material matter, because he willfully and materially made false statements in his February 29, 2000 affidavit. . . .

Accordingly, the district court imposed a two-level enhancement pursuant to U.S.S.G. § 3C1.1, for obstructing justice by "providing materially false information to a judge or magistrate." U.S.S.G. § 3C1.1, App. Note 4(f). After various other Guidelines calculations not pertinent to the issues on this appeal, the court determined an offense level of 19, a Criminal History Category of I, and a sentencing range of 30–37 months. The district judge sentenced appellant to 30 months' imprisonment, to be followed by two years of supervised release, and imposed a mandatory $400 special assessment.

This appeal followed.

## DISCUSSION

*a) Motion to Withdraw the Guilty Plea*

■ We review a district court's denial of a motion to withdraw a guilty plea for

abuse of discretion and any findings of fact in connection with that decision for clear error. *See United States v. Goodman*, 165 F.3d 169, 173 (2d Cir.), *cert. denied*, 528 U.S. 874, 120 S.Ct. 318, 145 L.Ed.2d 150 (1999). Appellant offers two arguments as to why the district court abused its discretion in denying his motion to withdraw his plea. Both arguments essentially challenge the validity of the plea.

■■■ First, he contends that the district court failed to discuss with him the elements of the charged conspiracy, to read the indictment to him, and to explain that the plea agreement constituted a waiver of his right to appeal. As a result, he contends that his plea was not knowingly made. The record belies these claims. The indictment was exceptionally detailed and clearly explained the charges and their elements. The plea agreement clearly explained the waiver of appeal. Appellant testified at his allocution that he had reviewed the indictment and the plea agreement with his attorney, that his attorney had explained those documents to him, and that he understood those documents. This testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made. *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997); *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir.1992). There is no substantial reason for finding otherwise in the present case. Finally, appellant's reliance on the district court's failure to read the indictment is frivolous because he expressly waived the reading of the indictment at the allocution.

■■■ Second, appellant contends that his plea lacked an adequate factual basis because he never admitted knowing that his acts were illegal at the time he committed them. Appellant claims that his statements at the allocution at best demonstrated that he had reason to suspect that the surety bonds were fraudulent but then ignored the suspicion rather than inquiring further. However, even with the gloss he puts on these statements, they provided a sufficient basis for his plea.

■■■ Rule 11(f) requires only that the trial court "determine that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." *United States v. Livorsi*, 180 F.3d 76, 79 (2d Cir.1999) (internal quotation marks and citations omitted). Appellant's description of his involvement in the fraudulent scheme, his use of fax machines to effect the sale of the fraudulent bond, and his admission that he "deliberately failed to heed the red flag that federal law enforcement officers brought to [his] attention," provide a sufficient factual basis for the plea. Were a jury to find as fact each of the acts and omissions described in the allocution, the evidence of his conscious avoidance would suffice to provide the knowledge element, and a guilty verdict would follow. *See, e.g., United States v. Walker*, 191 F.3d 326, 337 (2d Cir.1999) (holding that jury may be given conscious avoidance instruction if evidence may be construed as "deliberate ignorance" of requisite knowledge), *cert. denied*, 529 U.S. 1080, 120 S.Ct. 1702, 146 L.Ed.2d 506 (2000).[1] Rule 11(f) requires no more.

---

1. We note that, after argument in the present matter, we decided *United States v. Samaria*, 239 F.3d 228 (2d Cir.2001). In a yet more recent case, an appellant has argued that *Samaria* stands for the proposition that a conscious avoidance instruction is *per se* error in

b) *Sentencing Enhancement*

■ In light of the ample evidence that appellant's plea was knowing, voluntary, and not improperly induced, his later claim that he was improperly "coerc[ed]" by his attorney into pleading guilty is legally meritless. However, while appellant was not "coerc[ed]" to plead guilty in a legal sense, it is clear from reading his affidavit as a whole that appellant was using "coerc[ed]" in a layman's sense and was simply but truthfully describing the reasons for his agreeing to the plea.

■ To be sure, appellant's affidavit does not set out adequate grounds to withdraw the plea on the basis of voluntariness. Appellant's plea was not coerced "by physical force or threat of physical force" or "the improper use of economic power to compel another to submit to the wishes of one who wields it." Black's Law Dictionary 252 (7th ed.1999) (defining "coercion"). Nor do his circumstances suggest a guilty plea that might be considered involuntary because it was induced by what the Supreme Court has termed "mental coercion," such as being "gripped by fear of the death penalty or hope of leniency" such that a defendant "could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady v. United States*, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea. *See, e.g., Brady*, 397 U.S. at 750, 90 S.Ct. 1463; *United States v. Moree*, 220 F.3d 65, 72 (2d Cir.2000) ("That the attorney advised [defendant] to take the [plea] offer and warned him that his failure to do so would lead to a thirty year sentence merely asserts that the lawyer gave professional advice as to what the consequences of his choice might be. The defendant's statement that he was 'scared' is understandable, but is not attributed to any misconduct of his attorney."); *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) ("As a general matter, a plea is deemed ... 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.").

It does not follow from any of this, however, that the affidavit's use of the

---

a conspiracy case where the substantive offense underlying the conspiracy charge requires proof of specific intent. *See United States v. Tropeano* (*Barroso* ), No. 00–1708 (2d Cir. Argued Feb. 26, 2001). Such a reading of *Samaria* would attribute to it the overruling of a long-standing line of cases in this circuit holding that, while evidence of conscious avoidance cannot support a finding that a defendant knowingly participated in or joined the conspiracy, it may support a finding that a defendant knew of the unlawful objectives of the conspiracy. *See, e.g., United States v. Ferrarini*, 219 F.3d 145, 155–56 (2d Cir.2000), *petition for cert. filed*, 69 U.S.L.W. 3410 (U.S. Dec. 6, 2000) (No. 00–945); *United States v. Eltayib*, 88 F.3d 157, 170 (2d Cir.1996); *United States v. Scotti*, 47 F.3d 1237, 1242–43 (2d Cir.1995); *United States v. Beach–Nut Nutrition Corp.*, 871 F.2d 1181, 1196 (2d Cir.1989); *United States v. Lanza*, 790 F.2d 1015, 1022–23 (2d Cir.1986). However, *Samaria* does not purport to address the validity of those cases in any way. *Samaria's* discussion of conscious avoidance related only to a sufficiency issue, and the panel thus made it clear that, on the evidence before it, the requisite level of intent could not have been found even on a conscious avoidance theory. *See* 239 F.3d at 239–42. The evidence in the present case, however, was that appellant had strong reason to suspect that the transaction was fraudulent but deliberately failed to pursue the issue. Because conscious avoidance goes only to prove Lancaster's knowledge, and not to show his intent to participate in the scheme, *Samaria* is therefore of no relevance.

term "coerc[ed]" was necessarily perjurious. Read as a whole, the affidavit was clearly conveying an accurate description of the reasons Lancaster entered the plea. *See, e.g., United States v. Markiewicz*, 978 F.2d 786, 808 (2d Cir.1992) (viewing questions and testimony at civil deposition "as a whole" to determine whether statement was perjurious); *United States v. Schafrick*, 871 F.2d 300, 303 (2d Cir.1989) (holding that to determine whether statements are perjurious, they "must be judged according to common sense standards and given their natural meaning in relation to their context"); *cf. United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir.1976) ("A defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole.").

The affidavit used the word "coerc[ed]" to describe appellant's state of mind at the time of his plea. Guilty pleas are generally the result of a weighing of highly undesirable—coercive—alternatives rather than a soul-cleansing urge to confess. Appellant's affidavit suggests that his plea was no exception. After stating that he entered his plea "under the coercion exercised upon me by my attorney at the time," the affidavit went on to explain exactly what he meant by coercion. He had the impression that his lawyer "seldom made any effort to listen to" him, had given up any hope of winning his case, and had not done enough to prepare his defense. Appellant also had disagreements with his attorney over witnesses. The affidavit further stated that his lawyer predicted a longer prison term if he went to trial rather than plead guilty. It described the disheartening conversations with the prosecutor and a supervisory attorney at the Federal Defenders' office. Finally, it set out the attorney's (accurate) prediction

that a guilty plea would delay the start of his prison sentence. It is noteworthy that the attorney's testimony is, save for the trial preparation question, not greatly at variance with the affidavit's description of the details of the conversations that took place.

We believe that the affidavit's description of appellant's mental and emotional states immediately after these conversations as "frightened," "pressured," and "under duress," and its characterization of his attorney's efforts to persuade him to plead guilty as "coercive tactics," must be viewed in light of the details described above that accompanied them. So viewed, the characterizations are truthful. A criminal defendant facing trial and a prison sentence typically perceives that his attorney has not done enough in preparing the case-even if professional observers might deem the attorney's efforts as exceptionally diligent. *See e.g., Moree*, 220 F.3d at 71 ("Defendants for whom attorneys have been appointed under the Criminal Justice Act very commonly complain to the court in the early stages of the representation in an effort to have a new attorney appointed. It is commonplace for such a defendant to allege that the attorney is not paying sufficient attention to his case, has not come to see him in prison, has not undertaken sufficient investigation, is not making necessary motions, is not calling witnesses, or is trying to induce the defendant to plead guilty."). Thus, the fact that appellant's former attorney testified that the two had met five times and had conferred by telephone over sixty times in preparation for trial does not, as the government contends, prove that appellant's statement that his attorney "seldom made any effort to listen to me" was knowingly false. It is also typical that a defendant will disagree with defense counsel over whether to call certain witnesses, with the defendant seeing only an upside while counsel must anticipate the dangers of facial implausibility

and/or damaging cross-examination. It is similarly commonplace that a defendant will feel "coerced" in the lay sense of the word by an attorney's recommendation to plead guilty rather than proceed to trial. Such recommendations often come with predictions of almost inevitable conviction at trial followed by a long jail sentence. A feeling of duress is hardly an unusual outcome of such deliberations. Viewed in that light, appellant's affidavit seems quite truthful, albeit lacking in valid grounds for withdrawing his plea.

Accordingly, the imposition of the two-level enhancement for obstruction of justice was unwarranted.

## CONCLUSION

We affirm the denial of appellant's motion to withdraw his plea. We vacate the sentence, however, and remand to the district court for resentencing.