**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of: THORPE INSULATION COMPANY, <br><br> Debtor, <br><hr> NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, successor by merger to Transcontinental Insurance Company; CONTINENTAL INSURANCE COMPANY, as successor-in-interest to certain policies issued by Harbor Insurance Company, <br><br> and <br><br> MOTOR VEHICLE CASUALTY COMPANY; CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, <br><br> Appellants, <br> v. <br><br> THORPE INSULATION COMPANY; PACIFIC INSULATION COMPANY, <br><br> Appellees. | No. 08-56845 <br><br> D.C. No. 2:08-cv-03711-DSF <br><br> MEMORANDUM[*] |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted March 5, 2010
Pasadena, California

Before: CANBY and W. FLETCHER, Circuit Judges, and TUNHEIM, District Judge.[**]

Motor Vehicle Casualty Company ("Motor Vehicle") and Central National Insurance Company ("Central National") appeal an order of the District Court for the Central District of California dismissing their appeal of several bankruptcy court orders approving settlement agreements between Thorpe Insulation Company ("Thorpe") and four of its insurers (the "Settling Insurers"). We have jurisdiction of the appeal pursuant to 28 U.S.C. § 158(d)(1). Concluding that Motor Vehicle and Central National lack standing to bring the appeal, we affirm the district court's dismissal.

In October 2007, Thorpe filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California. *See* 11 U.S.C. §§ 1101–74. Long mired in mass-asbestos litigation, Thorpe sought to avail itself of § 524(g) of the Bankruptcy Code, which,

---

[**] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

subject to certain conditions, provides for the establishment of a channeling injunction and a claimant's trust as a means of containing liability while protecting the financial interests of claimants. *See* 11 U.S.C. § 524(g).

The bankruptcy court issued three orders approving settlement agreements between Thorpe and the Settling Insurers (the "Approval Orders"). The foremost feature of those agreements is the requirement that the insurer purchase, or "buy back," any insurance policies it issued to Thorpe, effectively terminating the policies. Motor Vehicle and Central National, both non-settling insurers, appealed the Approval Orders to the district court. Thorpe moved to dismiss the appeal, and the district court granted the motion. Motor Vehicle and Central National timely brought this appeal.

Here, as in the district court, Thorpe asserts that neither Motor Vehicle nor Central National qualifies as a "person aggrieved" by the bankruptcy court's orders and, therefore, both lack standing to appeal. *See Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999) ("[C]ourts have created an additional prudential standing requirement in bankruptcy cases:

The appellant must be a 'person aggrieved' by the bankruptcy court's order.")[1]

Whether an appellant is a person aggrieved is a question of fact, the determination of which we review for clear error. *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 670 (9th Cir. 1998).

As the parties invoking jurisdiction, Motor Vehicle and Central National bear the burden of establishing the existence of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To qualify as a person aggrieved, a party must be "directly and adversely affected pecuniarily by an order of the bankruptcy court." *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). Courts of appeal routinely deny standing "to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order." *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995).

---

[1] The person-aggrieved rule derives from § 39c of the Bankruptcy Act of 1898, as amended in 1938, which permitted appeal only by a "person aggrieved by an order of a referee." Bankr. Act § 39c, 11 U.S.C. § 67(c) (1976) (repealed 1978). As the Third Circuit Court of Appeals has explained, "[a]lthough this provision was repealed in 1978, it has been maintained by the courts as an essentially prudential requirement that only those who have been directly and adversely affected pecuniarily by an order of a bankruptcy court may bring an appeal." *Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995). We explicitly adopted the rule in *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983).

Motor Vehicle and Central National contend that the Approval Orders have already caused them to "suffer[] direct pecuniary harm" because, among other things, the Orders "approve judgment reduction provisions that inadequately protect Appellants" and "obligate Thorpe, through court-sanctioned contracts, to violate Appellants' rights." These contentions, however, are so lacking in specificity that they cannot constitute a showing of the harm they predict so generally.

Motor Vehicle and Central National further argue that the Approval Orders "deprive Appellants of the right to assert claims and defenses against Settling Insurers based on their pre-petition involvement in the underlying asbestos suits." This contention ignores the central point that deprives Motor Vehicle and Central National of standing with regard to all of their claims of injury by the settlements: nothing in a contract between Thorpe and the Settling Insurers can waive claims of Motor Vehicle or Central National, who are not parties to the contract. As the district court pointed out, nothing in the settlement agreements even *purported* to release claims of any third parties. Moreover, the bankruptcy court's Approval Orders contained clauses stating that "[n]othing in this Order shall terminate, enjoin, impair, alter, modify, release or limit in any way any contribution, reimbursement and/or indemnification claims that any and all non-settling insurers

of the Debtors have, or may have," against the Settling Insurers. Motor Vehicle and Central National contend that this disclaimer is insufficiently broad, but in fact the disclaimer is unnecessary: the settlement agreements between Thorpe and the Settling Insurers cannot waive claims or rights of non-parties to the agreements, and the Approval Orders contain no provisions impairing those non-party rights. Thus, there is no evidence that the settlement agreements would "diminish [Motor Vehicle's or Central National's] property, increase [their] burdens, or detrimentally affect [their] rights." *P.R.T.C.*, 177 F.3d at 777.

The remaining injuries asserted by Motor Vehicle and Central National are anticipatory. The settlement agreements obligate Thorpe to seek a § 524(g) injunction that could affect the rights of third parties such as the non-settling insurers. But no such injunction has been approved, and it is not clear on this record whether one will issue and what it will enjoin. Any contention that the injunction will violate the rights of Motor Vehicle or Central National is clearly

6

unripe for decision.[2]  *See Warth v. Seldin*, 422 U.S. 490, 499 & n.10 (1975);

*Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996).  The subjects of this

appeal are the Approval Orders, and they do not include a § 524(g) injunction; the

consequences of such an injunction are not before us.

The order of the district court is

**AFFIRMED.**

---

[2] Motor Vehicle and Central National contend that they are presently aggrieved because the settlement agreements, by contemplating Thorpe's efforts to secure a § 524 injunction, cause Motor Vehicle and Central National "to expend resources now to prevent the Bankruptcy Court from approving a channeling injunction that abridges Appellants' rights."  That argument proves too much.  If expenditures to prevent a possible future injunction create a present, appealable injury, every potential future injunction can be litigated before it comes to pass, if it ever would.  The abridgement of Appellants' rights has not happened yet, and may never happen.  The issue is not ripe.