13-612-bk
*In re Barnet*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2013

(Argued: October 15, 2013     Decided: December 11, 2013)

Docket No. 13-612

_____

IN RE: KATHERINE ELIZABETH BARNET,


DRAWBRIDGE SPECIAL OPPORTUNITIES FUND LP,

*Appellant*,

− v. −

KATHERINE ELIZABETH BARNET, Foreign Representative,
WILLIAM JOHN FLETCHER, Foreign Representative,

*Appellees.*

_____

Before:  JACOBS, STRAUB, *Circuit Judges*, AND KUNTZ,* *District Judge*.
_____

_____

\* The Honorable William F. Kuntz, II, of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Shelley C. Chapman, *Bankruptcy Judge*), granting recognition of a foreign main proceeding under Chapter 15 of the Bankruptcy Code. We hold that the Bankruptcy Court erred in concluding that the debtor in a Chapter 15 proceeding need not satisfy 11 U.S.C. § 109(a).

Accordingly, the order of the Bankruptcy Court is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

_____

DAVID F. HEROY (Jacob Kaplan, Baker & McKenzie LLP, New York, NY; Erin Elizabeth Broderick, Baker & McKenzie LLP, Chicago, IL, *on the brief*), Baker & McKenzie LLP, New York, NY, *for Appellant*.

HOWARD SEIFE (Madlyn Gleich Primoff, Kaye Scholer LLP, New York, *on the brief*), Chadbourne & Parke LLP, New York, NY, *for Appellees*.

_____

STRAUB, *Circuit Judge*:

Drawbridge Special Opportunities Fund LP ("Drawbridge") appeals from a September 6, 2012 order of the United States Bankruptcy Court for the Southern District of New York (Shelley C. Chapman, *Bankruptcy Judge*) granting recognition of a foreign main proceeding ("Recognition Order"). Because we find that 11 U.S.C. § 109(a) applies to the debtor in a foreign main proceeding under Chapter 15 of the Bankruptcy Code, we **VACATE** and **REMAND** to the Bankruptcy Court for further proceedings consistent with this opinion.

# BACKGROUND

Foreign Representatives are the liquidators of Octaviar Administration Pty Ltd. ("OA"), a company incorporated in Queensland, Australia. OA was placed into "external administration" in Australia on October 3, 2008. On July 31, 2009, the Supreme Court of Queensland ordered that OA be liquidated. As part of the investigation into OA's affairs, various Australian affiliates of Drawbridge have been investigated and, on April 3, 2012, a lawsuit was commenced in Australia against certain of those affiliates seeking AUD 210,000,000.

On August 13, 2012, Foreign Representatives petitioned the Bankruptcy Court for an order recognizing the Australian OA liquidation proceeding as a foreign main proceeding pursuant to 11 U.S.C. § 1515. Drawbridge appeared and filed an objection on August 30, 2012. On September 6, 2012, the Bankruptcy Court entered the Recognition Order, and Drawbridge filed a notice of appeal to the District Court on September 20. On October 5, 2012, Foreign Representatives filed a motion seeking discovery from Drawbridge and other parties. On October 9, 2012, Drawbridge sought a stay pending appeal.

On November 28, 2012, the Bankruptcy Court granted a joint application for certification of the Recognition Order for direct appeal to this Court pursuant

to 28 U.S.C. § 158(d)(2)(A)(i), (A)(iii) and (B)(i). The same day, the court entered an opinion explaining its decision. The court determined that (1) there was no controlling precedent governing its holding "that a debtor within the meaning of chapter 15 is not required to have a domicile, residence, place of business or property in the United States"; (2) the same issue was "a matter of public importance" that would "dramatically impact the jurisdiction of the United States bankruptcy courts and the use of Chapter 15 to assist in the administration of cross-border insolvency cases and the legitimate investigation of claims and assets in the United States"; and (3) a direct appeal would "materially advance the progress of this Chapter 15 case." Mem. Op. in Supp. of Certification of Direct Appeal to the Court of Appeals for the Second Circuit at 6, 9, *In re Barnet*, No. 12-13443, Dkt. No. 47 (Bankr. S.D.N.Y. Nov. 28, 2012).

The Bankruptcy Court denied Drawbridge's motion to stay discovery on December 10, 2012, and granted Foreign Representatives' discovery motion on December 12. The parties filed a joint application for direct appeal on December 21. On February 21, 2013, we granted the joint application and issued a stay of discovery.

**DISCUSSION**

**I.    Appellate Standing**

This case presents an unusual jurisdictional thicket.  Foreign Representatives argue that Drawbridge lacks appellate standing because Drawbridge is not aggrieved by the Recognition Order—the order named in the parties' joint request for direct appeal.  We agree that, under the facts of this case, Drawbridge may not appeal from the Recognition Order.  However, that conclusion does not end our analysis.  The Bankruptcy Court's subsequent discovery order cured the jurisdictional infirmity notwithstanding the parties' failure to discuss the discovery order in the joint request for direct appeal.  In effect, we construe the appeal as being from the discovery order, which appeal brings up for review the non-final Recognition Order that was a necessary prerequisite to discovery.

**A. The Recognition Order**

We first consider whether Drawbridge is permitted to appeal from the Recognition Order.  As this appeal is direct, the issue of appellate standing was not expressly addressed by any lower court opinion.  Regardless, we review jurisdictional questions of law *de novo*.  *See Adams v. Zarnel* (*In re Zarnel*), 619 F.3d

5

156, 161 (2d Cir. 2010) ("[W]e must first determine whether we have jurisdiction. . . . We review these legal issues [standing and mootness] *de novo*.").

"The current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution.  Congress has given us jurisdiction over all final decisions, judgments, orders, and decrees of the district courts in bankruptcy cases . . . ."  *DISH Network Corp. v. DBSD N. Am., Inc.* (*In re DBSD N. Am., Inc.*), 634 F.3d 79, 88 (2d Cir. 2011) (internal citations and quotation marks omitted).  Nonetheless, our precedents establish "'that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.'"  *Id.* at 89 (internal quotation marks omitted) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)).[1]  This test is "stricter than Article III's 'injury in fact' test," and

---

[1] "'While the pecuniary interest formulation is an often used and often useful test of standing in the bankruptcy context, it is not the only test.'"  *In re DBSD N. Am., Inc.*, 634 F.3d at 89 n.3 (quoting *In re Zarnel*, 619 F.3d at 162).  "Instead, even absent a direct pecuniary interest in the litigation, a *public* interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing."  *In re Zarnel*, 619 F.3d at 162 (internal quotation marks omitted); *see id.* (finding that the U.S. Trustee's "responsibility to represent and protect the public interest affords it a substantial

its "stringency . . . is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997); *see In re DBSD N. Am., Inc.*, 634 F.3d at 110 (quoting *In re Gucci*, 126 F.3d at 388).

The Recognition Order neither names Drawbridge nor directs any relief against Drawbridge. Nor does Drawbridge argue that it is affected by the automatic relief provided for in 11 U.S.C. § 1520.[2] *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127 (2d Cir. 2013) (considering an appeal from a recognition order by the party aggrieved by the automatic stay imposed by 11 U.S.C. § 1520(a)(1)). Instead, Drawbridge relies on the fact that at

interest in, and therefore standing to proceed with" an appeal). In this case, however, no party argues that the pecuniary interest test is not appropriate.

[2] Section 1520 prescribes the "[e]ffects of recognition of a foreign main proceeding," which include permitting a foreign representative to "operate the debtor's business and . . . exercise the rights and powers of a trustee," limiting the transfer and control of the debtor's property within the United States, and invoking 11 U.S.C. § 362's automatic stay provisions. The automatic relief imposed by Section 1520 stands in contrast to the discretionary relief that "may be granted upon recognition" pursuant to 11 U.S.C. § 1521. That discretionary relief includes enlarging the automatic stay, enforcing additional restrictions on transfer of the debtor's property, the taking of discovery, and granting relief that "may be available to a trustee," with some exceptions. 11 U.S.C. § 1521(a).

oral argument on the Recognition Order, Foreign Representatives stated their "intention . . . to take discovery" of the American "directors of the Drawbridge affiliates that were sued in Australia." Tr. of Record at 28:2–5, *In re Octaviar Administration Pty Ltd.*, No. 12-13443 (Bankr. S.D.N.Y. Sept. 6, 2012).

Were we to accept this argument, however, it would undermine the pecuniary interest test and ignore our "concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kabro Assocs. of W. Islip, LLC v. Colony Hills Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273 (2d Cir. 1997) (internal quotation marks omitted). It is not the intentions of a litigant that cause pecuniary harm but the relief directed by a Bankruptcy Court, and here the Recognition Order contained no relief that affected Drawbridge.

Indeed, we have explicitly stated that "potential harm" from a bankruptcy court order is insufficient to justify appellate standing. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 n.3 (2d Cir. 1988) (noting that "potential harm incident to the bankruptcy court's orders" is insufficient to render a party "directly and pecuniarily affected by them"). *Accord Nat'l Fire Ins.*

*Co. of Hartford v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 393 F. App'x 467, 469 (9th Cir. 2010) (summary order) ("Courts of appeal routinely deny standing 'to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not directly affected by that order.'" (quoting *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995))); *Duckor Spradling & Metzger v. Baum Trust* (*In re P.R.T.C., Inc.*), 177 F.3d 774, 778 (9th Cir. 1999) (endorsing our distinction in *In re Johns-Manville* between a "creditor opposing a plan of reorganization," who has standing, and "marginal parties . . . who face potential harm," who do not).

Here, the Recognition Order subjected Drawbridge only to potential future harm. To hold otherwise would ignore the Bankruptcy Court's discretion to deny discovery under 11 U.S.C. § 1521. It follows that the Recognition Order was not appealable by Drawbridge when issued.

**B. The Discovery Order**

Although we conclude that a recognition order is not itself appealable by a party that is not directly affected by the relief that order provides, this conclusion does not end our standing analysis. Here, Drawbridge is aggrieved by an order

9

of the Bankruptcy Court—the discovery order issued on December 12, 2012. We next consider whether that order is appealable and conclude that it is.

Because they are not final orders, the general rule is that discovery orders are not appealable unless the object of the discovery order refuses to comply and is held in contempt. *See, e.g.*, *Golan v. Am. Airlines, Inc.* (*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*), 490 F.3d 99, 104 (2d Cir. 2007); *Glotzer v. Stewart* (*In re S.E.C. ex rel. Glotzer*), 374 F.3d 184, 188 (2d Cir. 2004) ("[G]enerally, a litigant who wants to challenge a discovery order must disobey the order, be held in contempt of court, then bring an appeal . . . .").

This rule has an exception for discovery orders issued pursuant to 28 U.S.C. § 1782(a), which provides for discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); *see Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011). In *Chevron Corp.*, we reasoned that the discovery order "constitutes the final resolution of a petition to take discovery in aid of a foreign proceeding" and is, therefore, "immediately appealable." 629 F.3d at 306. The same reasoning applies in this context. Chapter 15 proceedings, like Section 1782 proceedings, are ancillary to a "suit in another tribunal," *id.*, such that there will never be a final resolution on the merits beyond the

10

discovery relief itself. It follows that the discovery order entered by the Bankruptcy Court was appealable.

Moreover, we have previously entertained an appeal from a party aggrieved by the automatic relief imposed by Section 1520. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 131. Appellate standing was warranted in *Fairfield* precisely because once recognition is granted, the imposition of automatic relief requires no further action by the Bankruptcy Court. The discretionary relief permitted by Section 1521 requires an extra step, but once that step is taken and the Bankruptcy Court has chosen to exercise its discretion, a party aggrieved by Section 1521 stands in the same position as one aggrieved by Section 1520. If appellate review is available to one, therefore, it should be available to the other.

Having concluded that we would have jurisdiction over an appeal from the discovery order, two questions remain: (1) whether the discovery order grants us jurisdiction over a premature notice of appeal from the Recognition Order; and (2) if so, whether an appeal from the discovery order brings up for review the Recognition Order. We answer both questions in the affirmative.

The notice of appeal filed on September 20, 2012, was directed to the District Court, not to this Court. Before the District Court assumed jurisdiction,

11

however, the Bankruptcy Court, *sua sponte*, suggested that the parties seek certification for direct appeal to this Court, giving as its reason that Drawbridge and its affiliates "really don't want to produce documents and [Foreign Representatives] really want the documents." Tr. of Record at 25:3–7, *In re Octaviar Administration Pty Ltd.*, No. 12-13443 (Bankr. S.D.N.Y. Oct. 23, 2012). Earlier in the same proceeding, Foreign Representatives had already made their argument that Drawbridge lacked appellate standing. *See id.* at 6:1–14:11. The Bankruptcy Court's statement that appellate review should be sought to expedite discovery, therefore, did not occur in a vacuum. Rather, the Bankruptcy Court believed that our resolution of the validity of the Recognition Order would be dispositive of whether discovery was available. The parties then jointly petitioned the Bankruptcy Court for certification of direct appeal, which was granted on November 28, 2012. The Bankruptcy Court issued its discovery order on December 12, 2012, and the parties did not file their joint request for direct appeal to this Court until December 21, 2012. At no time, therefore, was any notice of appeal or request for direct appeal pending in this Court before the discovery order had been issued.

"We have held that a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice. This rule applies even if the final judgment was not itself appealed." *Community Bank, N.A. v. Riffle*, 617 F.3d 171, 174 (2d Cir. 2010) (per curiam) (internal citations and quotation marks omitted); *see Berlin v. Renaissance Rental Partners, LLC*, 723 F.3d 119, 128 (2d Cir. 2013) (same as first sentence of *Riffle* quote).

In *Riffle*, we exercised jurisdiction over an appeal from a non-final (and, hence, non-appealable) denial of a motion to dismiss because by the time the appeal reached us, the underlying bankruptcy proceeding was rendered final (and appealable) by a subsequent confirmation order. 617 F.3d at 173–74. As in this case, the notice of appeal in *Riffle* was filed after the order that rendered the lower court proceeding final. *Id.* at 173. The discovery order, therefore, caused the "premature notice of appeal from" the Recognition Order to "ripen into a valid notice of appeal." *Id.* at 174.

We would reach the same result applying the Federal Rules of Appellate Procedure. In *Smith v. Barry*, the Supreme Court ruled that "[i]f a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is

13

effective as a notice of appeal." *Smith v. Barry*, 502 U.S. 244, 248–49 (1992); *see id.* ("[W]hen papers are technically at variance with the letter of Rule 3, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires. . . . Although courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal." (internal quotation marks and brackets omitted)). The year after *Barry*, the Federal Rules of Appellate Procedure were amended to add what is now Rule 3(c)(4), providing that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Rule 3(c)(4), therefore, codifies *Barry*'s instruction to "construe Rule 3 liberally" and to overlook technical variances.

Our precedents are in accord. Invoking Rule 3(c)(4), we interpreted a notice of appeal from a final judgment entered "on the 25th day of April, 2012, and from each part thereof" as also appealing from orders entered on five other days ranging from June 3, 2008, to April 24, 2012. *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 63 n.3 (2d Cir. 2013). We have similarly construed an appeal from the denial of a habeas

14

petition as also appealing from a subsequent motion for reconsideration. *See*

*Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 54–55 (2d Cir. 2004). In *Marrero Pichardo*,

we noted that "[i]n determining whether to permit a defective notice of appeal,

this court considers the notice of appeal so as to remain faithful to the intent of

the appellant, fair to the appellee, and consistent with the jurisdictional authority

of this court." *Id.* at 55 (internal quotation marks omitted).

In this case, there can be no argument that Foreign Representatives were in

any way deprived of the "notice required by Rule 3" or otherwise suffered

prejudice. The only legal issues raised on appeal concern the validity of the

Recognition Order, which is mentioned in the joint request for direct appeal.

Moreover, the Bankruptcy Court itself suggested that the purpose of direct

appeal was to resolve the question of discovery by determining the validity of

the Recognition Order. *See* Tr. of Record at 25:3–7, *In re Octaviar Administration*

*Pty Ltd.*, No. 12-13443 (Bankr. S.D.N.Y. Oct. 23, 2012). On the Bankruptcy Court's

suggestion, the parties jointly pursued a direct appeal, which request was only

filed with this Court after the appealable order had been issued by the

Bankruptcy Court. The failure to specifically identify the December 12 discovery

15

order, therefore, was a mistake of form for which the "appeal must not be dismissed." Fed. R. App. P. 3(c)(4).

Finally, a correctly noticed appeal from the discovery order would bring up for review the Recognition Order. Such an appeal, as with an appeal from any other final order, "opens the record and permits review of all rulings that led up to the judgment." 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3905.1 (2d ed.); *see Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007) ("[W]hen a district court enters a final judgment in a case, interlocutory orders rendered in the case typically merge with the judgment for purposes of appellate review." (internal quotation marks omitted)); *Anobile v. Pelligrino*, 303 F.3d 107, 115 (2d Cir. 2001) ("Generally, absent prejudice to the appellees, this Court interprets an appeal from a specific order disposing of the case as an appeal from the final judgment, which incorporates all previous interlocutory judgments in that case and permits their review on appeal."). Indeed, in this case, the Recognition Order was a necessary prerequisite to ordering discovery. *See* 11 U.S.C. § 1521(a)(4) (providing for discovery "[u]pon recognition"). The Recognition Order is properly before us, therefore, as it has merged with the subsequent discovery order.

16

Indeed, in our prior cases considering premature notices of appeal that ripen into valid notices of appeal we have considered the issues raised by the non-final orders appealed from. *See Berlin*, 723 F.3d at 127–28 (considering issues arising from the non-final attorneys' fees order); *Riffle*, 617 F.3d at 173–74 (considering issues arising from the non-final denial of a motion to dismiss). We see no reason not to do the same here.

**II.    The Recognition Order**

Having determined that we have jurisdiction over this appeal, we now turn to the merits, *i.e.*, whether Section 109(a) applies to a debtor in a Chapter 15 proceeding. We review a "bankruptcy court's legal conclusions *de novo*," "accepting the bankruptcy court's factual findings unless clearly erroneous." *In re Fairfield Sentry*, 714 F.3d at 132; *accord Super Nova 330 LLC v. Gazes*, 693 F.3d 138, 141 (2d Cir. 2012) (applying the same standard). A lower court decision "interpreting the meaning of a statute" is also reviewed *de novo*. *United States v. DiCristina*, 726 F.3d 92, 96 (2d Cir. 2013); *see Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 137 (2d Cir. 2013) ("We review *de novo* the District Court's . . . interpretation of the Constitution and federal statutes and regulations.").

17

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (internal quotation marks omitted). "'Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" *DiCristina*, 726 F.3d at 96 (quoting *Kozeny*, 541 F.3d at 171). Indeed, "[t]he preeminent canon of statutory interpretation requires us to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (plurality op.) (internal brackets omitted) (quoting *Ct. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)); *see Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting *Germain*, 503 U.S. at 253–54).

"Statutory enactments should, moreover, be read so as 'to give effect, if possible, to every clause and word of a statute.'" *DiCristina*, 726 F.3d at 96 (quoting *Duncan v. Walker*, 533 U.S. 164, 174 (2001)); *see Nwozuzu v. Holder*, 726 F.3d 323, 328 (2d Cir. 2013) ("[A] statute must be construed to give effect, if possible, to every clause and word . . . ." (internal quotation marks omitted)); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) ("One of

18

the most basic interpretive canons is that a statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks and brackets omitted)).

"The recognition of foreign proceedings is governed by Sections 1515 through 1524." *In re Fairfield Sentry*, 714 F.3d at 132. The basic requirements for recognition are outlined in 11 U.S.C. § 1517(a): (1) the proceeding "is a foreign main proceeding or foreign nonmain proceeding" as defined by 11 U.S.C. § 1502; (2) "the foreign representative applying for recognition is a person or body"; and (3) the petition for recognition meets the requirements of 11 U.S.C. § 1515.

A "foreign main proceeding"—the category relevant to this appeal—is "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A "foreign proceeding" is "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purposes of reorganization or liquidation." 11 U.S.C. § 101(23). Debtor is

19

defined, "[f]or the purposes of this chapter [15]," as "an entity that is the subject of a foreign proceeding."  11 U.S.C. § 1502(1).

The question presented by this appeal is whether 11 U.S.C. § 109(a) applies to a debtor under Chapter 15.  Section 109(a) provides:  "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."  Section 103(a) of Title 11 provides that, other than for an exception not relevant here, Chapter 1 "of this title . . . appl[ies] in a case under chapter 15."  Section 109, of course, is within Chapter 1 of Title 11 and so, by the plain terms of the statute, it applies "in a case under chapter 15."  Because Foreign Representatives made no attempt to establish that OA had a domicile, place of business or property in the United States, recognition should not have been granted.

The straightforward nature of our statutory interpretation bears emphasis. Section 103(a) makes all of Chapter 1 applicable to Chapter 15.  Section 109(a)—within Chapter 1—creates a requirement that must be met by any debtor. Chapter 15 governs the recognition of foreign proceedings, which are defined as proceedings in which "the assets and affairs of the debtor are subject to control

20

or supervision by a foreign court."  11 U.S.C. § 101(23).  The debtor that is the subject of the foreign proceeding, therefore, must meet the requirements of Section 109(a) before a bankruptcy court may grant recognition of the foreign proceeding.

Commentators have reached the same conclusion.  *See* Collier on Bankruptcy ¶ 1501.03 (Alan N. Resnick & Henry J. Somme eds., 16th ed.) ("Although chapter 15 is the principal chapter of the Bankruptcy Code that governs the conduct of ancillary cases, several other sections of the Bankruptcy Code . . . directly affect cases under chapter 15.  These include . . . section 109, which limits the types of debtors eligible for chapter 15 . . . ."); Susan Power Johnston, *Conflict Between Bankruptcy Code §§ 109(a) and 1515:  Do U.S. Bankruptcy Courts Have Jurisdiction Over Chapter 15 Cases If the Foreign Debtor Has No Assets or Presence in the U.S.?*, 17 J. Bankr. L. & Prac. 5, art. 6 (Aug. 2008), at 1 ("[S]ection 109(a) cannot be reconciled with Chapter 15 and . . . contrary to Congress' intent, foreign representatives of foreign debtors without assets in the U.S. are not, on the face of the statute, entitled to the assistance of U.S. bankruptcy courts.").

Foreign Representatives advance several arguments to resist this conclusion.  *First*, they argue that Section 109(a) creates a requirement for debtors

"under this title," whereas OA is a debtor under the Australian Corporations Act, not under Title 11. Put another way, Foreign Representatives argue that they are not seeking recognition of a debtor and that no debtor appeared before the Bankruptcy Court; rather, Foreign Representatives appeared seeking recognition of a foreign proceeding.

This argument fails, however, because the presence of a debtor is inextricably intertwined with the very nature of a Chapter 15 proceeding, both in terms of how such a proceeding is defined and in terms of the relief that can be granted. It stretches credulity to argue that the ubiquitous references to a debtor in both Chapter 15 and the relevant definitions of Chapter 1 do not refer to a debtor under the title that contains both chapters.

Although Foreign Representatives are correct that recognition is sought by a foreign representative, not by a debtor, 11 U.S.C. § 1515(a), "[t]he term 'foreign representative' means a person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs," 11 U.S.C. § 101(24). Similarly, as noted above, a foreign main proceeding is a foreign proceeding "pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Moreover, Section 1502 defines a "debtor"

22

as "the subject of a foreign proceeding," and the definition of "foreign proceeding" identifies "the assets and affairs of the debtor" as its subject. 11 U.S.C. §§ 101(23), 1502(1).

In addition, both the automatic and discretionary relief provisions that accompany recognition of a foreign main proceeding are directed towards debtors. 11 U.S.C. § 1520(a) applies 11 U.S.C. §§ 361–63, 549 and 552 to "the debtor," "the property of the debtor," or "an interest of the debtor in property," as appropriate. Section 362, in turn, provides for, *inter alia*, the stay of any "proceeding against the debtor." 11 U.S.C. § 362(a)(1); *see also* 11 U.S.C. § 552(a) (governing post-petition "property acquired by the estate or by the debtor"). The discretionary relief provisions follow the same pattern. *See* 11 U.S.C. § 1521 (providing for, *e.g.*, "entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative," "staying execution against the debtor's assets," and "granting any additional relief that may be available to a trustee"). Even the relief that Foreign Representatives seek requires a debtor under Title 11, as Section 1521(a)(4) provides for "the examination of witnesses . . . concerning the debtor's assets, affairs, rights, obligations or liabilities."

23

*Second*, Foreign Representatives argue that even if OA must qualify as a debtor under Title 11, it is only required to meet the Chapter 15-specific definition of "debtor" contained in Section 1502, and not also the requirements of Section 109. As noted above, Section 1502 defines a debtor "[f]or the purposes of this chapter" as "an entity that is the subject of a foreign proceeding." This argument also fails, as we cannot see how such a preclusive reading of Section 1502 is reconcilable with the explicit instruction in Section 103(a) to apply Chapter 1 to Chapter 15.

But even if the definition of "debtor" in Section 1502 blocked application of Section 109 within Chapter 15, that would not support the conclusion that OA need not satisfy Section 109 in order for Foreign Representatives to obtain recognition of the foreign proceeding. Given its broadest reading, Section 1502 still could not affect the definitions contained within Chapter 1 because Section 1502's scope is expressly limited to "this chapter" (Chapter 15). It follows that the definitions of "foreign proceeding" and "foreign representative," which both occur within Chapter 1, would not be affected. 11 U.S.C. § 101(23)–(24). Because they both require a debtor, as discussed above, OA would need to satisfy Section

109 in order to meet the requirements contained within Chapter 15 that rely upon those definitions.

The definition of "debtor" in Section 1502, however, does not block application of Section 109 within Chapter 15. Chapter 1 contains a definition of "debtor" introduced by the phrase, "[t]he term 'debtor' means." 11 U.S.C. § 101(13). Section 109(a) does not say that the term debtor "means" anything. Rather, it adds a requirement for the kinds of "person" that "may be a debtor under this title." 11 U.S.C. § 109(a). Section 1502, like Section 101, introduces its definition with the phrase "the term— (1) 'debtor' means." This linguistic parallelism makes clear that Section 1502 supplants Section 101—*i.e.*, it supplants the definition of debtor within the context of Chapter 15—but it does not supplant requirements for "a debtor under this title" not included in the definition. *Cf. DiCristina*, 726 F.3d at 99 ("'When an exclusive definition is intended the word 'means' is employed.'" (internal brackets and ellipsis omitted) (quoting *Groman v. Comm'r of Internal Revenue*, 302 U.S. 82, 86 (1937))).

The Foreign Representatives' proposed interpretation also fails because it would render Section 109(a) meaningless. They argue that what debtor "means" in Chapter 15 supplants a requirement placed on a debtor "under this title." But

25

consistency would then require that what a debtor "means" in Chapter 1 would have the same effect. The result would be that Section 109(a) would have no application under any circumstances because the definition in Chapter 1 applies generally. This violates the "most basic interpretive canon[]" requiring us to interpret statutes such that "no part will be inoperative or superfluous." *Mary Jo C.*, 707 F.3d at 156. Foreign Representatives' argument, therefore, must be incorrect.

Finally, Foreign Representatives offer no explanation as to why, if Congress wished to exclude Chapter 15 from the reach of Section 109(a), it did not say as much. Congress' silence is particularly inexplicable in light of the fact that Congress did expressly restrict the application of Section 109(b) to Chapter 15 by removing a prohibition on application to foreign insurance companies. 11 U.S.C. § 1501(c) ("This chapter does not apply to– (1) a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109(b).").

We would end our "plain meaning" analysis here. However, Foreign Representatives argue that the context and purpose of Chapter 15 support their reading of the statute. A properly limited contextual analysis of statutory

26

language is encompassed within the ambit of a textual analysis.  *See In re Application of N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 406 (2d Cir. 2009) ("[W]e examine the text of the statute itself, interpreting provisions in light of their ordinary meaning and their contextual setting."); *United States v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008) ("In determining whether statutory language is ambiguous, we 'reference the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" (internal ellipsis omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))).

Such an analysis, however, supports application of Section 109(a) to Chapter 15.  Congress amended Section 103 to state that Chapter 1 applies to Chapter 15 at the same time as it enacted Chapter 15.  *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §§ 801–02, 119 Stat. 23.  This strongly supports the conclusion that Congress intended Section 103(a) to mean what it says, namely, that Chapter 1 applies to Chapter 15. *Cf. United States v. Battista*, 575 F.3d 226, 234 (2d Cir. 2009) ("[W]hen two sections share the same purpose, the parallel provisions can, as a matter of general

27

statutory construction, be interpreted to be *in pari materia*." (internal quotation marks omitted)).

Foreign Representatives argue that application of Section 109(a) to Chapter 15 would be inconsistent with 11 U.S.C. § 1528 and 28 U.S.C. § 1410. Section 1528 states that "[a]fter recognition of a foreign main proceeding, a case under another chapter of this title may be commenced only if the debtor has assets in the United States." Foreign Representatives argue that the necessary implication is that a foreign main proceeding may be recognized even when there are no assets in the United States—*i.e.*, Section 109(a) does not apply to Chapter 15 proceedings.

This argument fails, however, because Section 109(a) requires "a domicile, a place of business, or property in the United States." Section 1528, therefore, is more restrictive than Section 109. It follows that there is nothing contradictory or disharmonious about applying Section 109(a) to Chapter 15 and then further requiring that Section 1528 is met before a case under another chapter of Title 11 may be commenced.

Foreign Representatives come closer to the mark with their argument that 28 U.S.C. § 1410 provides a venue for Chapter 15 cases even when "the debtor does not have a place of business or assets in the United States." This venue

28

statute, however, is purely procedural. Given the unambiguous nature of the substantive and restrictive language used in Sections 103 and 109 of Chapter 15, to allow the venue statute to control the outcome would be to allow the tail to wag the dog.

Finally, Foreign Representatives argue that the purpose of Chapter 15 would be undermined by application of Section 109(a). "[W]e look first to the text and structure of the statute as the surest guide to congressional intent." *Mary Jo C.*, 707 F.3d at 168 (internal quotation marks omitted). Here, Chapter 15 contains an express purpose section that states: "The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of": (1) international cooperation; (2) "greater legal certainty for trade and investment"; (3) "fair and efficient administration of cross-border insolvencies"; (4) "protection and maximization of the value of the debtor's assets; and (5) facilitation of the rescue of financially troubled businesses." 11 U.S.C. § 1501(a). None of these stated purposes are dispositive as they could all be accomplished with or without imposition of Section 109(a). It is true that the Model Law does not contain an express requirement akin to Section 109(a),

*see generally* United Nations Commission on International Trade Law,

*UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment*, *available*

*at* http://www.uncitral.org/pdf/english/texts/insolven/insolvency-e.pdf (last

accessed Dec. 9, 2013), but the Model Law also states that "a State may modify or

leave out some of its provisions," *id.* at Part 2 ¶ 12.  Regardless, the omission of

Section 109(a), or its equivalent, from the Model Law does not suffice to

outweigh the express language Congress used in adopting Sections 109(a) and

103(a).  This is especially true where other provisions of federal law provide the

relief that the Model Law was intended to provide.  Here, 28 U.S.C. § 1782(a)

provides for discovery in aid of foreign proceedings without any requirement

akin to Section 109(a).[3]  Congress, therefore, may have intended to limit the relief

provided by Chapter 15 because it knew that additional relief was already

available outside of Chapter 15.

---

[3] Indeed, we note that Foreign Representatives have commenced an action under 28 U.S.C. § 1782 and have entered into a stipulation with Drawbridge and others calling for production of documents within sixty days of October 3, 2013.  *See* Stip. & Order, *In re Application of Barnet*, 13-Misc.-214, Dkt. No. 32 (S.D.N.Y. Oct. 4, 2013).

**CONCLUSION**

Because we find that 11 U.S.C. § 109(a) applies to the debtor in a foreign main proceeding under Chapter 15 of the Bankruptcy Code, we **VACATE** and **REMAND** to the Bankruptcy Court for further proceedings consistent with this opinion.

We direct the Clerk of Court to forward copies of this opinion to Congress following the specified protocol adopted by the Judicial Conference.