**UNITED STATES of America,
Appellee,**

**v.**

**Kevin S. BELLEGARDE, aka
Francis Scott, aka Joelle,
Defendant–Appellant.**

**Docket No. 01–1397.**

United States Court of Appeals,
Second Circuit.

June 28, 2002.

Frank H. Sherman, Assistant United States Attorney, for Michael A. Battle, United States Attorney, New York City, for Appellee.

Michael J. Tuohey, Law Offices of Michael J. Tuohey, New York City, for Defendant–Appellant.

Present CALABRESI, SACK, B.D. PARKER, JR., Circuit Judges.

*SUMMARY ORDER*

Defendant–Appellant Kevin S. Bellegarde, aka Francis Scott, aka Joelle, appeals from a judgment of conviction entered on July 10, 2001 and amended on July 25, 2001 in the United States District Court for the Western District of New York (Siragusa, *J.*), following his guilty plea. On November 30, 2000, pursuant to a plea agreement, Bellegarde pleaded guilty before Judge Siragusa to two counts of a multi-count indictment. Specifically, Bellegarde pleaded guilty to Count One, conspiracy to distribute and possess with intent to distribute marijuana and fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and Count Four, possession of a firearm in connection with that drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Bellegarde subsequently notified the court of his intention to withdraw his guilty plea and formally sought to withdraw his plea by motion and affidavit dated January 19, 2001. Bellegarde's motion was denied without a separate hearing on February 5, 2001. On June 19, 2001, Bellegarde was sentenced to 240 months' imprisonment on Count One, 60 months' imprisonment on Count Four (to be served consecutively), a five year term of supervised release, a total fine of $1,500, and a $200 special assessment. Bellegarde is currently serving his sentence.

## BACKGROUND

Bellegarde was originally charged, together with other individuals, on November 4, 1999 with a violation of 21 U.S.C. § 846, and was subsequently charged, on August 10, 2000, in a thirteen count indictment alleging violations of 21 U.S.C. §§ 846, 841(a)(1), 844(a) and 18 U.S.C. § 924(c)(1). The district court had set November 15, 2000 as the cut-off date for any negotiated guilty pleas. On that date, in response to a request from Bellegarde's court-appointed counsel, Gary Muldoon, the district court extended the plea cut-off date to November 21. Following a meeting with the Government and other law enforcement personnel on November 21, Muldoon requested that a plea agreement be prepared.

On November 27, 2000, a plea agreement was sent to Muldoon. At the time of the scheduled change of plea hearing, 9:00 a.m. on November 28, Muldoon requested an adjournment because he had met with Bellegarde for too short a time to consider the agreement. The hearing was rescheduled for the next afternoon and, on November 29, was rescheduled again, at Defendant's request, for November 30. On November 29, Muldoon made clear to the court that he had engaged in extensive discussions with Bellegarde about the strengths and weaknesses of the Government's case, had told him about his right to trial, had provided a recommendation to Bellegarde, and had told him that it was his decision whether to plead guilty. In addition, the Government stated that Bellegarde and Muldoon met with the Government to go over some questions that Bellegarde had about the agreement and other issues.

At the November 30 hearing, Bellegarde told Judge Siragusa that he wanted to plead guilty. He acknowledged that he had discussed with his attorney the strengths and weaknesses of the Government's case and had been told about the potential penalties that he faced if convicted. He also stated that he had read the agreement "numerous times," that he had had enough time to consult with counsel, and that he was satisfied with Muldoon's representation. Judge Siragusa reviewed the requirements of the plea and Bellegarde's potential sentence. In addition,

the court described to Bellegarde his rights, including his right to a jury trial. The court then established a factual basis for the plea[1] and, in so doing, explained the elements that the Government would have to prove beyond a reasonable doubt in order to obtain a conviction on the charges against Bellegarde. Bellegarde then entered guilty pleas to Counts One and Four of the Second Superceding Indictment pursuant to the plea agreement.

By letter dated December 3, 2000, and postmarked December 4, Bellegarde asked the district court for permission to withdraw his plea. The letter argued that Muldoon had provided "insufficient" and "ineffective" counsel in connection with his case and the guilty plea. The letter also suggested that Bellegarde had pleaded guilty because he was under duress and had been coerced into the plea. On December 7, Judge Siragusa appointed Paul J. Vacca as new counsel and reviewed with Bellegarde the procedures for the court's consideration of his request to withdraw his guilty plea.

Bellegarde and Vacca appeared before the court to address the issue of the guilty plea withdrawal the following week. Vacca told Judge Siragusa that he had reviewed the record and had suggested to Bellegarde that he not attempt to withdraw his guilty plea. Vacca also told the court that he had discussed with Bellegarde the likelihood of success of his motion to withdraw the guilty plea as well as the potential for a five-level increase in

Bellegarde's offense level under the United States Sentencing Guidelines ("U.S.S.G.") stemming from a loss of credit for acceptance of responsibility and an upward adjustment for obstruction of justice. Judge Siragusa determined that Bellegarde had read the transcript of his plea and explained to him the general law governing the withdrawal of guilty pleas. Bellegarde read a statement to the court setting forth his claims in support of the withdrawal of the plea. Judge Siragusa then noted that what Bellegarde was alleging conflicted with what he had told the court earlier.

Bellegarde subsequently told the court that he was seeking to retain an attorney and requested additional time to consult with that new counsel, James Harrington. Judge Siragusa granted this request and, after an additional request, adjourned the case until January 3, 2001. On January 3, 2001, the court determined that Harrington had not in fact been retained, though he had prepared an affidavit for Bellegarde to sign in support of his motion to withdraw his guilty plea. At that point, Vacca (still Bellegarde's counsel) reiterated his concerns about Bellegarde's intention to withdraw his guilty plea. In Vacca's view, doing so was not in Bellegarde's best interests since it could lead to sentence enhancements. Vacca also stated that because Bellegarde's affidavit would conflict with his plea made under oath, he believed that Bellegarde would be committing perjury. The next day, the district court released Vacca and stated that it

---

1. The relevant conduct forming the basis of the charge, which was admitted to in the plea agreement, included: (1) the sale of a dime bag of marijuana to plainclothes police officers in Rochester, New York, on July 13, 1995; (2) possession of approximately six grams of crack cocaine and two bags containing 1.7 grams of marijuana when stopped at a Buffalo, New York, bus terminal on or about October 6, 1997; and (3) the sale of $50 of

cocaine base to a confidential informant in Jamestown, New York, on or about October 29, 1998. In addition, on September 18, 1999, police had searched an apartment where Bellegarde and another co-defendant lived and found a handgun in Bellegarde's bedroom. The plea agreement also included Bellegarde's admission that, in July 1999, he possessed a gun that was part of the drug conspiracy.

would provide a third assigned lawyer for Bellegarde to consult with about his guilty plea withdrawal. The court reiterated the potential effects of Bellegarde's bringing such a motion. Specifically mentioned were sentencing enhancements such as a loss of credit for acceptance of responsibility and an upward adjustment for obstruction of justice, and the loss of an opportunity to aid the Government in the trial of Bellegarde's co-defendants, which was scheduled to start the following week.

On January 5, 2001, the district court appointed Michael J. Tuohey to represent Bellegarde and adjourned the case for one week to allow Tuohey to consult with his new client. Judge Siragusa again explained to Bellegarde the potential detrimental effects of Bellegarde's motion on his sentence. On January 12, 2001, Tuohey told the court that Bellegarde wished to proceed with his motion to withdraw his guilty plea and, on January 19, Bellegarde filed a motion to withdraw the plea. The Government responded to the motion and the district court heard argument on the issue.

In due course, the court denied the motion from the bench. It noted that Bellegarde had not raised any significant question about the voluntariness of the plea. A hearing on the issue was not warranted because Bellegarde's arguments "merely contradict[ed]" the record in the case. Furthermore, the Government would be prejudiced by the withdrawal of the plea because the trial of the co-defendants would be completed by the time Bellegarde could be tried and, as a result, the Government would have to try the case again.

On June 4, 2001, the district court received a letter from Bellegarde making further allegations in support of his motion to withdraw his guilty plea. The district court, in response, twice adjourned the sentencing date to permit defense counsel to confer with Bellegarde over how to proceed.

At sentencing, on June 19, 2001, the district court concluded that there was no basis on which to re-open the motion to withdraw the guilty plea. The court then turned to the Presentence Report ("PSR"), which had suggested a loss of credit for acceptance of responsibility, as well as an upward adjustment for obstruction of justice. Bellegarde objected to these two aspects of the recommended sentence. He argued that he had—at least partially—admitted his responsibility and contended that no obstruction of justice took place because his actions were a result of his confusion and mistake. The court rejected these arguments, finding that in Bellegarde's motion to withdraw his plea he had expressly denied his guilt on the two counts as to which he had pleaded guilty. It also found that Bellegarde's affidavit in support of his motion contained perjury, which warranted the enhancement for obstruction of justice. With these adjustments, the court determined that Bellegarde's offense level was 36 and that his criminal history category remained at II. The court sentenced Bellegarde to the middle of the range on Count One and to the statutory minimum on Count Four, for a total of 300 months' imprisonment. This appeal followed.

## DISCUSSION

Bellegarde makes three arguments on appeal: (1) that the district court abused its discretion in refusing, without an evidentiary hearing, to allow him to withdraw his guilty plea; (2) that the district court abused its discretion by denying him any credit for acceptance of responsibility and by imposing a two-level enhancement for obstruction of justice when calculating his offense level under the Guidelines; and (3)

that the district court failed to obtain a sufficient factual basis for his guilty plea.

Under Fed.R.Crim.P. 32(e), a "court may permit [a] plea to be withdrawn if the defendant shows any fair and just reason." As this court has held, however, a defendant has no absolute right to withdraw a guilty plea and the defendant has the burden of demonstrating that a withdrawal should be permitted. *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001). The district court should consider the amount of time between the plea and the motion to withdraw and the possible prejudice to the government of a withdrawal of the plea. Fed.R.Crim.P. 32(e) advisory committee note. "However, the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997).

The fact that a defendant changes his mind based on a different evaluation of the strength of the case against him or the penalty that might result is not sufficient reason to permit withdrawal of a plea. *See United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992). In addition, this court has made clear that though "[a] claim of innocence can be the basis for withdrawing a guilty plea, ... the claim must be supported by evidence. 'A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.'" *Hirsch,* 239 F.3d at 225 (quoting *Torres,* 129 F.3d at 715). An evidentiary hearing is not automatic upon a motion to withdraw a guilty plea. *See Gonzalez,* 970 F.2d at 1100. "Although the standard to be applied in granting a hearing is less rigorous than the standard for granting the motion to withdraw the plea, the defendant must present some significant questions concerning the voluntariness or general validi-

ty of the plea to justify an evidentiary hearing." *Id.* (citations omitted). And, the district court may deny the motion without a hearing if the defendant's allegations "merely contradict the record, are inherently incredible, or are simply conclusory." *Id.*

■ Bellegarde argues first that the plea was not voluntarily given since he was coerced into it and because he felt that he had no choice but to plead guilty. His sense of duress was compounded by the fact that he was given very little time to make up his mind. The record reveals, however, that the district court repeatedly extended deadlines and re-scheduled Bellegarde's plea hearing precisely to provide him with time to consider his options. Bellegarde and Muldoon met with the Government to review the plea and Bellegarde stated in court that he had read the agreement multiple times. Bellegarde also indicated an awareness of his rights. He had no questions about the plea agreement, agreed that no promises or representations were made to him to get him to plead guilty, and stated that he was pleading guilty of his own free will.

There is no basis for concluding that Muldoon's advice on this question amounted to coercion. Though Muldoon supported Bellegarde's decision to plead guilty, Muldoon stated to the court, in Bellegarde's presence, that he had also made clear that it was ultimately Bellegarde's decision. In short, there were no physical threats, no economic incentives, and no mental pressure that would have caused Bellegarde to be incapable of rationally considering his options. *See United States v. Juncal,* 245 F.3d 166, 172 (2d Cir.2001). As this court noted in *Juncal:*

> It is ... commonplace that a defendant will feel "coerced" in the lay sense of the word by an attorney's recommendation to plead guilty rather than proceed to

trial. Such recommendations often come with predictions of almost inevitable conviction at trial followed by a long jail sentence. A feeling of duress is hardly an unusual outcome of such deliberations. Viewed in that light, appellant's [claim of coercion] seems quite truthful, albeit lacking in valid grounds for withdrawing his plea.

*Id.* at 174.

■ Bellegarde's second claim with respect to his guilty plea is that he should have been permitted to withdraw the plea because it was the result of ineffective assistance of counsel. The two-part test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for evaluating ineffective assistance of counsel claims applies in the context of guilty pleas. *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.1996) (citing *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). According to *Coffin,* the defendant must demonstrate first that counsel's performance fell below an objective standard of reasonableness, and, second, that " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.* (quoting *Hill,* 474 U.S. at 59)).

Bellegarde argues that Muldoon's advice involved a misunderstanding of a legal issue; he claims that prior to his plea he had been advised by Muldoon that he could be found guilty of the firearms charge in Count Four even if he were acquitted on the conspiracy charge in Count One. In describing the elements of the offense at the plea hearing, however, the district court explained that the Government *would* need to prove Bellegarde guilty on Count One in order to convict him on Count Four. The following exchange makes this clear:

Court: Do you understand that if they failed to prove [the elements] beyond a reasonable doubt you couldn't be convicted; do you understand that?

Defendant: Yes sir.

Court: You are looking a little puzzled.

Defendant: I didn't know if I wasn't convicted of the conspiracy, the 924(c) would be dropped too.

Court: That is a fact. To be convicted of that second charge, you have to be convicted of the first. In fact I would tell the jury that if they found you not guilty on that charge, they couldn't convict you of the gun charge. I don't want any confusion about that.

The second prong of the *Strickland* inquiry is plainly not met in this case. Here, the alleged error and any confusion that error may have been caused, was negated by the court. Given that Bellegarde pleaded guilty after the district court's explanation, the error could not be a "but for" cause of Bellegarde's plea.[2]

■ Bellegarde also argues that Muldoon's assistance was ineffective because he incorrectly told him that a co-defendant, Okeem Williams, had pleaded guilty in the case. Assuming this allegation is true, it would not meet the first prong of the *Strickland* inquiry. At the relevant point in time, it appears that Williams had

2. The Government argues that Muldoon's understanding was correct and the district court's approach was erroneous. In that case too, the ineffective assistance of counsel argument fails. For, then, the district court's putative error is harmless, given that the district court's understanding weighs *against* a guilty plea and Defendant believed the court's approach was correct at the time that he actually pleaded guilty. It follows that, regardless of whether the district court or Muldoon had the correct understanding of the law, the disagreement does not provide a valid reason for Bellegarde to withdraw his plea.

also negotiated an extension of the cut-off date for entering a guilty plea. Accordingly, Muldoon's statement appears to have been made in good faith and would likely not qualify as objectively unreasonable. Furthermore, Bellegarde at no point explains why this fact would have altered his decision to plead guilty.

In sum, Bellegarde's contentions do not present any "significant questions concerning the voluntariness or general validity of the plea." *Gonzalez*, 970 F.2d at 1100. Accordingly, the district court did not abuse its discretion in refusing, without holding a hearing on the issue, to allow Bellegarde to withdraw his plea.

■ Bellegarde's second argument—that the court abused its discretion in denying him credit for acceptance of responsibility and enhancing his sentence by two levels for obstruction of justice—is also without merit. Under the Guidelines, § 3E1.1, a court can decrease a defendant's offense level by two points (and possibly a third point) based on a defendant's acceptance of responsibility. We have held:

> An attempt to withdraw a plea, although not automatically disqualifying a defendant from seeking an adjustment, is a well-established ground for denying the adjustment.... [T]he reason for withdrawing the plea must be unrelated to a claim of innocence. In order for a defendant to maintain his entitlement to an acceptance-of-responsibility adjustment while attempting to withdraw a guilty plea, his reason for demanding a trial must be "designed 'to assert and preserve issues that *do not relate to factual guilt*....'"

*Hirsch*, 239 F.3d at 226 (citations omitted) (emphasis added in *Hirsch*).

In the instant case, Bellegarde maintains that he should have received partial credit for acceptance of responsibility de-spite his attempt to withdraw his guilty plea because he had acknowledged some involvement in the crimes. Bellegarde's affidavit stated: "I am guilty of the substantive counts in the indictment regarding my possession of drugs, but am not guilty of the conspiracy nor [sic] the weapons charges the way that they are indicted." The district court found that though Bellegarde's contention "may be correct, the crimes he pled guilty to he maintains he didn't do.... He denies he did both crimes." Given Bellegarde's own statements with respect to his guilt as well as the court's finding that Bellegarde's sentence should be enhanced based on obstruction of justice, the court acted well within its discretion in declining to grant an acceptance of responsibility reduction in Bellegarde's offense level.

■ The district court's determination that Bellegarde's sentence should be enhanced based on obstruction of justice is similarly sound. The Guidelines indicate that a sentence enhancement is appropriate where the defendant has provided perjured testimony. U.S.S.G. § 3C1.1, cmt. n. 4(b). *See also United States v. Zagari*, 111 F.3d 307, 328 (2d Cir.1997). In implementing this type of enhancement, however, the Guidelines remind "the court [to] be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, cmt. n. 2. In addition, the court must consider the defendant's relevant statements in the light most favorable to the defendant. *See United States v. Onumonu*, 999 F.2d 43, 45 (2d Cir.1993).

■ The district court found that various statements in Bellegarde's affidavit in support of the motion to withdraw his plea

amounted to perjury. For example, the court found that in the affidavit Bellegarde asserted that he was innocent of the charges against him, a claim that directly contradicted his plea. On appeal, Bellegarde maintains that these statements in the affidavit do not qualify as perjury and did not run contrary to his plea because, at the time of his plea, he misunderstood the charges against him and was coerced into pleading guilty. As the district court noted, the court had explained the charges against him in detail, described what the Government would have to prove, and outlined Bellegarde's rights. Accordingly, the court concluded "I don't know how much more explicit it could be.... [T]he allegation that he didn't understand what he was pleading to, I think, is belied by his allocution in the record." As the court later said: "Again, referring to the transcript of November 30th, it is clear the Defendant knew exactly what he was pleading to...." The district court properly concluded that Bellegarde did understand the charges against him and was not coerced (and, in turn, that his affidavit involved perjury). In short, the court's findings satisfy the requirement that the defendant "1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *Zagari,* 111 F.3d at 329.[3]

Bellegarde's final argument, that the court abused its discretion in finding an adequate factual basis for Bellegarde's plea, is also meritless. Fed.R.Crim.P. 11(f) "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. DeJesus–Abad,* 263 F.3d 5, 9 (2d Cir.2001) (*per curiam*) (internal quotation marks omitted). We have held that there is "no specific dialogue that must take place in order to comply" with the rule and the "court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case." *United States v. Andrades,* 169 F.3d 131, 136 (2d Cir.1999). Indeed, "a reading of the indictment to the defendant coupled with his admission of the acts described in it [is] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." *Id.* (internal quotation marks omitted) (alteration in original). In the instant case, the court confirmed that Bellegarde understood the elements of the offenses, reviewed the indictment, and asked specific questions to ascertain the facts at issue. Contrary to Bellegarde's assertions, this provides a sufficient basis upon which the district court could conclude that Bellegarde was guilty of the conspiracy charge.

We have considered all of Appellant's claims and find them to be without merit. The judgment of the district court is hereby AFFIRMED.

---

3. The district court, moreover, found multiple instances of perjury quite apart from the claim of innocence, such as the assertion in the affidavit that he was never given the option to go to trial by his attorney. The court noted that in the proceedings on November 30 the district court itself advised Bellegarde that he did not have to plead guilty, that he could go to trial and have a trial by jury if he wished. In addition, Muldoon stated to the court in Bellegarde's presence that he had made this right clear to Bellegarde.