**Peter AJEMIAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**11–CR–1091 (VM)**
**15–CV–9351 (VM)**

United States District Court,
S.D. New York.

Signed March 18, 2016

208

Thomas Edward Engel, McKool Smith, New York, NY, for Petitioner.

Andrew Daniel Goldstein, Daniel Ben Tehrani, Justin S. Weddle, Nicole Ware Friedlander, U.S. Attorney's Office, E. Danya Perry, United States Attorney, New York, NY, for Respondent.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Petitioner Peter Ajemian ("Ajemian") filed this *pro se* motion pursuant to 28 U.S.C. Section 2255 ("Section 2255") to vacate, set aside, or otherwise correct his conviction and sentence. ("Section 2255 Motion," Dkt. No. 830.) Ajemian is currently serving a sentence of ninety-six (96) months of imprisonment to be followed by three (3) years of supervised release after he pled guilty to two counts in connection with his participation in a longstanding and widespread scheme among Long Island Railroad ("LIRR") workers to obtain disability benefits from the United States Railroad Retirement Board ("RRB") through fraud. (*See* Dkt. Minute Entries for Jan. 18, 2013 and May 24, 2013; Dkt. No. 401.) In addition, Ajemian was ordered to pay $116,500,000 in restitution and forfeiture. (Dkt.Nos.398, 401.)

For the reasons discussed below, Ajemian's Section 2255 Motion is DENIED in part. A hearing is ordered as to Ajemian's sentence to answer substantial questions raised in Ajemian's Section 2255 Motion regarding the amount of loss suffered by the LIRR as a result of his fraudulent actions and in light of the alleged newly discovered evidence.

## I. BACKGROUND [1]

Ajemian, a board certified orthopedic surgeon, participated in a longstanding scheme in which LIRR employees conspired to fraudulently obtain federal disability benefits from the RRB.

By Indictment, the Government charged Ajemian with the following criminal offenses: (a) conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. Section 1349 ("Count One"); (b) conspiracy to defraud the RRB, in violation of 18 U.S.C. Section 371 ("Count Two"); (c) making false claims in violation of 18 U.S.C. Section 287 and 2 ("Count Three"); and (d) health care fraud in violation of 18 U.S.C. Section 1347 and 2 ("Count Four"). Counts 5, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, and 18 charged Ajemian with mail fraud in violation of 18 U.S.C. Sections 1341 and 2. Count 19 charged Ajemian with wire fraud in violation of 18 U.S.C. Sections 1343 and 2.[2]

---

1. The Court derives the factual and procedural summary below from the Superseding Indictment, dated May 22, 2012 ("Indictment") (Dkt. No. 96) and from the following submissions: (1) Petitioner's Brief in Support of his 28 U.S.C. Section 2255 Motion, dated Nov. 25, 2015 (Dkt. No. 830); (2) Government's Brief. in Opposition to Petitioner's Motion, dated Feb. 1, 2016 ('Gov't Opp.') (Dkt. No. 842); and (3) Petitioner's Reply Memoranda, dated Mar. 4, 2016 ('Ajemian's Reply') (Dkt. No. 847). Except where specifically referenced, no further citation to these sources will be made.

2. The Court notes that Ajemian was indicted only on the counts explicitly referenced in the above summary.

On January 18, 2013, Ajemian pled guilty to Counts 1 and 4 of the Indictment pursuant to a plea agreement with the Government ("Plea Agreement"). (*See* Dkt. Minute Entry for Jan. 18, 2013.) As part of the Plea Agreement, the parties agreed that the Guidelines range applicable to Ajemian's conduct was 121 to 151 months imprisonment. Ajemian also expressly agreed to "not file a direct appeal; bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241 ... of any sentence within or below the Stipulated Guidelines Range of 121–151 months' imprisonment." (Dkt. No. 842, Ex. A at 5.) Ajemian specifically acknowledged that he "accepted the [Plea Agreement] and decided to plead guilty because he is in fact guilty." (*Id.*) The Court conducted a thorough hearing in advance of accepting Ajemian's guilty plea. (*See* Dkt. No. 396.)

The Court sentenced Ajemian on May 24, 2013 to concurrent terms of ninety-six (96) months imprisonment on Count 1 (conspiracy) and Count 4 (health care fraud) followed by three (3) years of supervised release. (*See* Dkt. Minute Entry for May 24, 2013; Dkt. Nos. 398, 401.) In addition, the Court imposed restitution and forfeiture in the amount of $116,500,000 and a $200 special assessment. (*Id.*) The Government thereafter moved to dismiss the remaining fifteen (15) open counts against Ajemian. Ajemian is currently serving his sentence at FCI Otisville Satellite Camp.

On November 25, 2015, Ajemian filed the instant Section 2255 Motion to vacate, set aside, or otherwise correct his conviction and sentence on the following grounds: (1) actual innocence; (2) ineffective assistance of counsel; (3) evidence that the government executed his Plea Agreement in bad faith; (4) that he was coerced into pleading guilty; and (5) that

based on newly discovered evidence, his sentence was incorrectly calculated. (Dkt. No. 830.)

The Government filed an Opposition to Ajemian's Section 2255 Motion arguing that with the exception of Ajemian's claims based on newly discovered evidence, his Section 2255 Motion is time barred because Ajemian's sentence became final on June 11, 2013, and therefore, Ajemian was required to file the instant Section 2255 Motion by June 11, 2014. ("Gov't Opp.," Dkt. No. 842.) Ajemian filed his Section 2255 Motion on November 25, 2015, almost a year and a half later. In addition, the Government contends that even if the majority of Ajemian's claims were not time-barred, they should be denied as waived by his Plea Agreement with the Government. (*Id.*) Ajemian subsequently filed his Reply. ("Ajemian's Reply," Dkt. No. 847.)

## II. *DISCUSSION*

■■■ At the outset, the Court notes that Ajemian is a *pro se* litigant. As such, his submission must be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993) (internal citation omitted). The Court must construe Ajemian's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). A *pro se* litigant, however, is not exempt "from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir.1983)).

A person in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States," "the

court was without jurisdiction to impose such sentence," or "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. Section 2255(a).

■ "[N]ew evidence in a Section 2255 proceeding ... is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner." *Giacalone v. United States,* 739 F.2d 40, 43 (2d Cir.1984) (internal quotation marks and citations omitted.) The petitioner bears the burden of convincing this court that the newly-discovered evidence "would have resulted in an acquittal." *Brown v. United States,* No. 05 CR 857, 2011 WL 3273202, at *6 (S.D.N.Y. Aug. 1, 2011). The "petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citations omitted).

To be timely, a Section 2255 Motion must be filed within one year of the latest of, "the date on which the judgment of conviction becomes final," Section 2255(f)(1), or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," Section 2255(f)(4). The applicable limitations period is claim specific.

The Court agrees with the Government that Ajemian's conviction became final on June 11, 2013 and that, with the exception of Ajemian's claims based on newly discovered evidence, his Section 2255 Motion was required to be filed by June 11, 2014. The Court finds that even on the merits, Ajemian's claims fail. The Court now turns to each of the five (5) grounds stated in Ajemian's Section 2255 Motion.

## A. ACTUAL INNOCENCE

"In order to establish actual innocence, [a] 'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.' Furthermore, in the context of a habeas petition following a guilty plea, because 'actual innocence' means factual innocence, not mere legal sufficiency, 'the Government is not limited to the existing record to rebut any showing that the petitioner might make. Rather ... the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy....'" *Fountain v. United States,* 357 F.3d 250, 255 (2d Cir.2004) (citations omitted).

■ Where a defendant states under oath that he understands the charges against him and voluntarily chooses to plead guilty, "a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Juncal,* 245 F.3d 166, 171 (2d Cir.2001).

■ Ajemian argues that the Indictment is "entirely related and dependent upon the notion and supposition that the patients treated by Dr. Ajemian and the other doctors were not actually disabled, but only falsely contending to be so." (Dkt. No. 830 at 1.) Ajemian contends that the RRB's post-trial study, conducted by an independent group of doctors, determined that 91% of the patients that were approved for disability benefits by the three doctors, including Ajemian's patients, were actually disabled at the time of reexamination ("Post–Board Order Approvals"). Ajemian argues that the remaining 9% of patients who were not reapproved comprise patients who were not

examined during the new study: namely, patients who had received disability payments under other unrelated insurance policies, and a non-trivial number of former patients who were deceased or could not be located for reexamination. Accordingly, Ajemian argues that the basis of the Indictment is void and that he is innocent.

Ajemian also argues that neither the Government's case-in-chief at trial nor the Indictment established that his patients were truthful to him. Ajemian argues that as a doctor he must rely on what his patients tell him they are experiencing. Moreover, Ajemian argues that the Indictment is misleading. He cites numerous reasons, many of which relate to the use of Metro North statistics which the Government used as a point of comparison to demonstrate that there were far more approvals of disability applications at the RRB than at Metro North, thereby supporting the Government's case for fraud.

The Government argues that Ajemian's claims vis-à-vis innocence are time-barred and waived pursuant to the Plea Agreement and should therefore be denied.

The Government further contends that even if Ajemian's claims were not time-barred or waived, Ajemian, under oath, represented to this Court that he committed fraud against the RRB and other private insurance providers. The Government argues that the Post–Board Order Approvals do not alter Ajemian's testimony that he committed fraud. On this point, the Government refers to evidence proffered at trial, including numerous witnesses who testified to conspiring with Ajemian to commit such fraud.

The Court is persuaded by the Government's argument that Ajemian's claim is waived by the explicit language of the Plea Agreement into which Ajemian voluntarily and knowingly entered. Even if Ajemian's claim was not waived, his testimony under oath that he knowingly and intentionally conspired with others to defraud the RRB is sufficient to deny a claim of actual innocence. The Post–Board Order Approvals do not alter the substance of Ajemian's testimony, the falsity of the documents prepared by Ajemian and submitted to the RRB, or Ajemian's intent and attempt to defraud the RRB.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

 The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; see also Kimmelman v. Morrison, 477 U.S. 365, 374–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir.2001) ("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). However, criminal defendants asserting ineffective assistance of counsel have a high threshold to meet "in order to deter a baseless attack on the performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." Percan v. United States, 294 F.Supp.2d 505, 511 (S.D.N.Y.2003); see also Kimmelman, 477 U.S. at 382, 106 S.Ct. 2574.

 To prove ineffective assistance of counsel, the petitioner must satisfy a two-prong test. First, he must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." Strickland v. Washington, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, he must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693–94, 104 S.Ct. 2052.

■ First, in evaluating whether counsel's representation was deficient, counsel's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." *Id.* at 689, 104 S.Ct. 2052; *see also United States v. Yingst,* 623 Fed.Appx. 17, 20 (2d Cir.2015) (stating that "[t]he standard for evaluating the adequacy of counsel's representation is 'a most deferential one,' since 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment' ") (citations omitted). A petitioner cannot merely show that counsel made an error that had "some effect" on the result of trial, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. The errors in counsel's judgment must therefore be "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Regis v. United States,* 665 F.Supp.2d 370, 371 (S.D.N.Y.2009) (citations omitted); *see also United States v. DiTommaso,* 817 F.2d 201, 215 (2d Cir.1987) (stating that the "benchmark for judging any such claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

■ Second, in evaluating whether counsel's errors prejudiced the outcome of the proceeding, the court must consider the totality of the evidence before the jury. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. "[U]nlike the determination whether counsel's performance was deficient, [the prejudice inquiry] may be made with the benefit of hindsight." *Morgan v. United States,* No. 06 CV 1247, 2009 WL 1172849, at *5 (E.D.N.Y. May 1, 2009) (*citing Lockhart v. Fretwell,* 506 U.S. 364, 371–73, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)); *see also Hill v. A.L. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (stating that "[t]he determination whether the error 'prejudiced' the defendant ... will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial").

■ The standard of proof for the prejudice prong is less than a preponderance of the evidence. *See Soto–Beltran v. United States,* 946 F.Supp.2d 312, 317 (S.D.N.Y.2013). However, "some objective evidence other than defendant's assertions [is required] to establish prejudice." *Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003).

Although a petitioner must satisfy both prongs to obtain relief, the Supreme Court has stated that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052; *see also Brown v. Artuz,* 124 F.3d 73, 80 (2d Cir. 1997) (declining to address the first prong of *Strickland* on the ground that the defendant could not satisfy the prejudice prong); *United States v. O'Neil,* 118 F.3d 65, 73 (2d Cir.1997) (same); *Rodriguez v. Portuondo,* No. 01 CV 0547, 2006 WL 2168314, at *7 n. 13 (S.D.N.Y. Aug. 1, 2006).

■ In the context of guilty pleas, the "prejudice" prong requires the defendant to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366; *accord Premo v. Moore,* 562 U.S. 115, 131–32, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011). "This assessment, in

turn, will depend in large part on a prediction whether the [errors] likely would have changed the outcome of trial." *Lockhart*, 474 U.S. at 59, 106 S.Ct. 366.

 Ajemian argues that his counsel, Thomas Engel, was ineffective because he failed to secure Ajemian a plea agreement that had any meaningful benefit to Ajemian. Ajemian contends that the record establishes that Ajemian is actually innocent and that no reasonable jury could have found Ajemian guilty on the false and misleading evidence the Government put forward.

The Government argues that Ajemian's claim is time-barred and waived. In addition, the Government argues that the indictment to which Ajemian pleaded guilty charged him in 17 counts, with a 300–year statutory maximum. The negotiated plea permitted Ajemian to accept a plea as to only two counts, with a statutory maximum of 30 years imprisonment, with the Government agreeing to dismiss the remaining counts. Moreover, the Government agreed to a loss calculation that assumed that 25% of Ajemian's patients were not committing fraud, thereby reducing the intended loss to an amount below $200 million and lowering Ajemian's offense level and associated Guidelines range.

The Court is persuaded by the Government's argument that Ajemian's claim is waived by the explicit language of the Plea Agreement into which Ajemian voluntarily and knowingly entered. Even if Ajemian's claim was not waived, he received a meaningful benefit as a result of the Plea Agreement. Namely, Ajemian's offense level and associated Guidelines range were reduced. Moreover, that Ajemian received the same sentence as his co-defendants who went to trial does not void the Plea Agreement of its meaning—especially in light of Ajemian's extensive role in the fraudulent scheme. As the Government argues, the trial evidence demonstrated that Ajemian was responsible for 54% of the fraudulent disability applications.

## C. *PLEA AGREEMENT CHALLENGES*

 "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (*quoting Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A plea is voluntary if it is entered by an individual "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," unless "induced by threats," "misrepresentation[,] ... or perhaps by promises that are by their nature improper." *Id.* at 619, 118 S.Ct. 1604 (internal citation omitted).

 Moreover, "[w]hen the government negotiates a plea agreement with a defendant that includes waiver of the right to appeal, one benefit the government is supposed to receive ... is freedom from having to address post-conviction arguments." *Latham v. United States*, 164 F.Supp.2d 365, 367 (S.D.N.Y.2001).

First, Ajemian argues that the Plea Agreement was negotiated in bad faith because he received a virtually identical sentence to that of his co-defendants.

 Setting aside the issue that Ajemian has likely waived this argument, as previously discussed, there is no basis for Ajemian to argue that his Plea Agreement is now void of good faith simply because he received the same sentence as his co-defendants who went to trial. The role Ajemian played in the conspiracy appears to have been far greater than his co-defendants and, as discussed, Ajemian gained meaningful benefit from the Plea Agreement.

■ Second, Ajemian argues that he "begrudgingly and under duress agreed to plead guilty to a crime that he did not commit" due to the threat of "dying behind bars." (Dkt. No. 830 at 26.)

As the Government argues, Ajemian points only to his potential post-trial sentence as the basis for his claimed "coercion" to accept the Plea Agreement. Courts have rejected this argument on numerous occasions. *See e.g. Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) ("Although every [plea bargain] has a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiations of pleas."); *Shearer v. Smith*, No. 08 CV 9905, 2013 WL 5586311, at *4 (S.D.N.Y. Oct. 9, 2013) ("Petitioner also objects to the ... conclusion that he voluntarily pleaded guilty because he claims that it was clear to him that if he failed to accept the People's plea offer ... 'the court would sentence him to a substantially longer sentence after trial.' Petitioner's argument that he was somehow coerced into accepting the plea because of its advantageous nature ... is directly at odds with the law. ... [T]he Supreme Court has expressly held that even if fear of an increased sentence causes a defendant to accept a plea, 'it does not necessarily prove that the plea was coerced and invalid as an involuntary act.'" (citation omitted)).

The Court is persuaded by not only the Government's argument but also by review of the plea transcript (Dkt. No. 396) that Ajemian's guilty plea was not coerced. Ajemian testified that he understood the Plea Agreement, that his plea was voluntary, and that he was pleading because he was in fact guilty.

■ Finally, Ajemian argues that the Court's decision to impose a ninety-six (96) month sentence was driven by the Government's misrepresentation of the facts of the case, namely that the patients seen by Ajemian were not in fact disabled. Ajemian explains that the loss amount placed Ajemian at an offense level of 32 with a corresponding Guidelines' range of 121 to 151 months. While the Court did make a downward departure from the sentencing range, Ajemian argues that the Guidelines' range was based on a false loss amount.

The Government argues that the new evidence has no bearing on Ajemian's guilty plea, and as such, his claim should be denied as waived. In addition, the Government argues that the Post–Board Order Approvals do not alter the fact that Ajemian intended to commit fraud and falsified the documents he prepared for submission to the RRB in the course of the fraud.

The Court is persuaded that Ajemian's argument raises substantial questions that, in light of the alleged newly discovered evidence concerning the Post–Board Order Approvals, counsel in favor of a Court hearing on the amount of loss suffered by the LIRR as a result of Ajemian's fraudulent actions.

### ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Peter Ajemian (Dkt. No. 830) to vacate, set aside, and/or dismiss his conviction pursuant to 28 U.S.C. Section 2255 is **DENIED** in part; and it is further

**ORDERED** that counsel for all parties appear for a hearing before this Court on April 29, 2016 at 2:00 p.m. in Courtroom 11B at the United States Courthouse, 500 Pearl Street, New York, New York, on the issue presented by defendant Peter Ajemian in his motion, regarding resentencing in

light of the alleged newly discovered evidence concerning loss calculation. (Dkt.Nos.830.) Upon conclusion of such a hearing, the Court will consider scheduling additional proceedings as necessary.

**SO ORDERED.**